IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN HEARD,

    Plaintiff,

v.                                                        CV 13-1236 KG/WPL

WARDEN BRAVO, et al.,

    Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

    John Heard, a prisoner who was incarcerated at Guadalupe County Correctional Facility ("GCCF"), filed a complaint against several correctional employees, pursuant to 42 U.S.C. § 1983. (Doc. 1.) Heard alleges that Defendants C. Chavez and P. Bhakta violated his First and Fourteenth Amendment rights by impermissibly rejecting mail and denying him due process related to those rejections. (*Id.*; Docs. 21, 31.) At all relevant periods, Chavez was the mailroom supervisor at GCCF and Bhakta was the property manager at GCCF. Bhakta has not yet been served with the complaint.

    There are a total of eight claims in the case. Chavez is a defendant for claims 2 through 8. (*See* Doc. 27.) Chavez filed two partial motions for summary judgment (Docs. 29, 58) and a motion to stay discovery (Doc. 60), while Heard filed a motion to disclose discovery that I treat as a motion to compel (Docs. 41-43). Having considered the filings and the relevant law, and being otherwise fully advised on these matters, I recommend that the Court dismiss Claims 7 and 8 without prejudice, dismiss Claim 6 with prejudice, deny summary judgment as to Claims 2

through 5, order a *Martinez* report as to Claims 2 through 5, deny as moot Heard's motions for an extension of time, and deny Heard's motion to compel.

### BACKGROUND

The parties agree that, at all times relevant to this litigation, Heard was incarcerated in New Mexico and a "prisoner" for purposes of the Prison Litigation Reform Act ("PLRA"). The Court has covered much of the factual background of this case in previous Orders, so I will not repeat it here. (*See* Docs. 18, 27.)

I will briefly summarize each claim and the rejected mail item to which each claim refers. Claim 2 alleges deprivation of due process relating to GCCF's rejection of a Prison Bay catalog. (*See* Doc. 31 Ex. 1 at 14-17.) Claim 3 alleges deprivation of due process relating to GCCF's rejection of a Mind Escape Pix catalog. (*See id.* at 20-22.) Claim 4 alleges deprivation of due process relating to GCCF's second rejection of a Mind Escape Pix catalog. (*See* Doc. 31 Ex. 2 at 7-9.) Claim 5 alleges censorship in violation of the First Amendment relating to GCCF's rejection of the 2013 Sports Illustrated Swimsuit Edition. (*See* Doc. 31 Ex. 3 at 4-5.) Claim 6 alleges censorship in violation of the First Amendment relating to GCCF's rejection of a Sports Illustrated Swimsuit Explorer's book. (*See id.* at 22-23.) Claim 7 alleges deprivation of due process and censorship relating to GCCF's rejection of the February 2013 Ironman magazine. (*See* Doc. 31 Ex. 4 at 5-6.) Claim 8 alleges deprivation of due process and censorship relating to GCCF's rejection of an Elite Paralegal and Prisoner Services publication. (*See* Doc. 31 Ex. 5 at 2.)

Chavez filed her first Motion for Summary Judgment in June 2014, and initially moved for dismissal of all claims against her. (Doc. 29.) Heard responded with clarifications of his claims (Doc. 31), and Chavez specified in her reply that this motion addresses only Claims 6 and

7 (Doc. 34). As to Claim 6, Chavez argues that Heard failed to allege Chavez's personal involvement in the mail rejection, and therefore failed to meet the requirements of § 1983. (Docs. 29, 34.) As to claim 7, Chavez argues that Heard failed to exhaust administrative remedies with regard to the rejection of the February 2013 Ironman magazine, and therefore his claim was barred under the PLRA. (Doc. 29.) In his response, Heard agrees that he failed to exhaust. (Doc. 31 at 7.)

Sometime in July or August 2014, Heard apparently propounded interrogatories, requests for admission, and requests for production upon Chavez. (*See* Doc. 37.) Heard then filed "Plaintiff [sic] Reply to Defendant Chavez's Response to Plaintiff's Request for Admission" (Doc. 41), "Plaintiff's Responses to Defendant Chavez's Responses to Plaintiff [sic] 'Request for Subpoena to Produce Document'" (Doc. 42), and a Motion to Disclose Discovery (Doc. 43). Chavez construed these three documents, collectively, as a Rule 37 Motion to Compel. (Doc. 46.) *See* FED. R. CIV. P. 37(a). Chavez responded to all of these documents (Docs. 46-48), essentially arguing that the motion should be denied for failure to confer with opposing counsel on a discovery matter, in accordance with Rule 37(a)(1). Heard did not file a reply.

Chavez then filed a Second Partial Motion for Summary Judgment, requesting dismissal of Claims 2 through 5, and Claim 8. (Doc. 58.) As to Claims 2 through 4, Chavez argues that, even though Heard's mail was, in fact, denied, he took full advantage of the grievance procedure, and there was no denial of due process even though Heard did not ultimately receive the mail. (*Id.*) As to Claim 5, where Heard claims censorship of the 2013 Sports Illustrated Swimsuit Edition, Chavez argues that there was no constitutional violation because prison authorities have broad latitude in regulating prison safety, and the Swimsuit Edition constitutes sexually explicit material that could compromise institutional safety and security. (*Id.*) As to Claim 8, Chavez

3

argues that Heard failed to exhaust his administrative remedies and that the claim is therefore barred under the PLRA. (*Id.*) Heard admits that he failed to exhaust his administrative remedies as to Claim 8. (Doc. 31 at 7.)

Heard filed a Motion for Extension to Respond, requesting additional time to conduct discovery so that he may adequately address the Second Motion for Summary Judgment. (Doc. 59.) Chavez then filed a Motion to Stay Discovery, arguing that Heard's discovery requests are overbroad, and requesting the Court to stay discovery during the pendency of the two dispositive motions. (Doc. 60.) Heard filed a response to the motion to stay discovery and requests that the Court deny Chavez's motion. (Doc. 63.) Chavez filed a reply. (Doc. 70.) Chavez also filed a response to Heard's motion for an extension of time, agreeing to the extension of time to respond and asking the Court to deny Heard's request for further discovery. (Doc. 64.) Finally, Heard filed a Second Motion for Extension of Time on November 17, 2014, requesting that the Court allow him an additional twenty-one days to respond to Chavez's Second Partial Motion for Summary Judgment. (Doc. 69.)

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The record and all of its reasonable inferences must be viewed in the light most favorable to the nonmovant. *See Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). In providing factual support for a summary judgment motion, a party may provide the Court with an affidavit or declaration, provided that such a document is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. at 56(c)(4). A complaint

may be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

While the moving party bears the burden of showing that there are no genuine disputes of material fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party makes this showing by presenting "facts such that a reasonable jury could find in [its] favor." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

A bona fide factual dispute exists even when a pro se plaintiff's factual allegations that are in conflict with the defendant's affidavits are less specific or well-documented than the contentions of the defendant. *See Hall*, 935 F.2d at 1109. Conclusory and self-serving allegations without facts that would be admissible in evidence do not create a material factual dispute that would preclude summary judgment. *Id.* at 1111; *see also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1321 (10th Cir. 2010) (quoting *L&M Enter., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000)) ("Unsupported conclusory allegations . . . do not create a genuine issue of fact."); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005) (citations and internal quotation marks omitted) ("We have long held that conclusory allegations without specific supporting facts have no probative value.").

**DISCUSSION**

Chavez raises four arguments in her motions for summary judgment that, she claims, entitle her to judgment as a matter of law on all claims. As to Claims 7 and 8, involving the February 2013 Ironman magazine and the Paralegal and Prisoner Services publication, respectively, she argues that Heard failed to exhaust his administrative remedies. As to Claim 6, dealing with the Sports Illustrated Explorer's book, she argues that Heard failed to allege her personal involvement and that she was not personally involved in rejecting the publication. As to Claim 5, involving the Sports Illustrated 2013 Swimsuit issue, Chavez argues that, even if everything Heard says is true, there has been neither unconstitutional censorship nor other unconstitutional activity. Finally, as to Claims 2 through 4, Chavez argues that there has been no denial of due process because Heard fully availed himself of the available administrative remedies, even though he never received his magazines.

**I.    Exhaustion of Remedies**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision requires a prisoner to exhaust available administrative remedies before filing suit, even if those remedies cannot provide the type of relief the prisoner seeks. *See Booth v. Churner*, 532 U.S. 731, 734 (2001); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). It also requires "proper" exhaustion, which means that prisoners must "complete the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). These rules are prescribed by individual prison grievance procedures, not by the PLRA. *Id.*

The Tenth Circuit has held that a plaintiff who begins the grievance process but does not complete it has not exhausted his administrative remedies and is barred from bringing a § 1983 action. *Jernigan*, 304 F.3d at 1032. The doctrine of substantial compliance does not apply to the exhaustion requirement, and giving notice to prison officials by means other than the established grievance process is not sufficient to exhaust available administrative remedies. *See id.* Failure to exhaust under the PLRA is an affirmative defense and, therefore, the defendant bears the burden of proof. *Jones*, 549 U.S. at 216-17; *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). A defendant must prove both 1) that administrative remedies were available to the plaintiff and 2) that the plaintiff failed to exhaust the available remedies. *Purkey v. CCA Det. Ctr.*, 263 F. App'x 723, 726 (10th Cir. 2008) (unpublished).

Though there are no exceptions to the exhaustion requirement of the PLRA, the statute is clear that an inmate is required to exhaust only those remedies that are "available." *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011). The Tenth Circuit has held that a remedy is "available" when it is "capable of use for the accomplishment of a purpose." *Id.* (quotation and citation omitted). A remedy is not available if "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of [the] administrative remedy." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). Remedies are also deemed unavailable when a prison official's failure to timely respond to the grievance renders administrative remedies unavailable, *Jernigan*, 304 F.3d at 1032, and when using the administrative process "will result in serious retaliation and bodily harm," *Tuckel*, 660 F.3d at 1252.

At all times relevant to this lawsuit, GCCF and the New Mexico Corrections Department ("NMCD") had inmate grievance procedures in place. (*See* Doc. 29 Ex. 1, Affidavit of Krystal Rivera.) The Inmate Grievance procedure has three steps: 1) an informal complaint within five

7

days of the incident in question, addressed to the inmate's Unit Manager; 2) if the informal complaint fails to resolve the situation within five working days, a formal grievance must be filed within twenty days of the incident and submitted to the facility's Grievance Officer, who has twenty working days to conduct an investigation and make a report to the Warden, who then has fifteen working days to issue a decision; and 3) an appeal to the Office of the Secretary of Corrections within seven days of receiving the decision from the Warden. (*Id.*) NMCD defines "[e]xhaustion of [a]dministrative [r]emedies" as "[t]he completion of the grievance process through the Department level appeal." (Doc. 29 Ex. 2 at 2.)

    A.  Claims 2 Through 6

The parties agree that Heard exhausted administrative remedies with regard to Claims 2 through 6. (Docs. 29, 34, 58.) Because Chavez does not argue that these claims are barred under the PLRA, I will address them substantively in a later section.

    B.  Claim 7

Chavez argues that Claim 7 is barred under the PLRA because Heard failed to exhaust his administrative remedies. (Doc. 34 at 2-3.) The parties agree that Heard filed an informal complaint relating to this claim, but dispute whether further remedies were available. He claims that he was transferred to Otero County Prison Facility ("OCPF") while awaiting an answer to the informal complaint filed May 18, 2013. Heard argues that after he was transferred to OCPF on July 24, 2013 (Doc. 58 Ex. 2), he sent three letters to the Grievance Officer at GCCF requesting copies of the Claim 7 grievance so that he could proceed with the administrative process. (Doc. 31 at 8.)

Krystal Rivera was the Grievance Lieutenant at GCCF during the relevant period. (Docs. 29 Ex. 1, 34 Ex. 1.) Lieutenant Rivera twice swore, through personal knowledge and under

penalty of perjury, that Heard filed an informal complaint relating to the Ironman magazine, but failed to file any subsequent appeal. (Docs. 29 Ex. 1, 34 Ex. 1.) The Inmate Informal Complaint contains a notation that the issue could not be resolved and the "Recommend formal grievance" box is checked. (Doc. 29 Ex. 4.) Heard signed the document and acknowledged that the matter was unresolved on May 28, 2013.

According to NMCD policy, Heard had twenty days from the date of the incident—apparently May 17, 2013—to file a formal grievance. *See* CD-150501; (s*ee also* Doc. 29 Ex. 4.) Heard appears to claim that he never received a copy of his Inmate Informal Complaint after he was transferred to OCPF. However, Heard signed the document a full fifty-seven days before he was transferred. Fifty-seven days is well beyond the twenty-day allotment to file a formal grievance. Heard makes no colorable argument as to why he did not file a formal grievance after signing the informal complaint on May 28, 2013.

Because Heard failed to file a formal grievance after acknowledging that the informal complaint could not be resolved, he failed to exhaust the administrative remedies available to him. Failure to exhaust available administrative remedies is a complete procedural bar under the PLRA. Therefore, I recommend that Claim 7 be dismissed without prejudice for failure to exhaust administrative remedies.

   C. Claim 8

Chavez argues that Claim 8 is likewise barred under the PLRA for failure to exhaust administrative remedies. (Doc. 58 at 3.) The parties agree that Heard filed an informal complaint relating to this Claim, but dispute whether further remedies were available. Heard again argues that his transfer to OCPF impinged his ability to pursue administrative remedies. While the informal complaint relating to Claim 8 is not marked "unresolved" or further filled out by staff or

by Heard, Heard still failed to exhaust administrative remedies with regard to this Claim. (*See* Doc. 31 Ex. 5 at 2.)

NMCD policy CD-150500G(4) spells out the effect of the facility's failure to respond to an informal complaint: the grievant is entitled to move on to the next level for review. According to NMCD policy, if the informal complaint is not resolved within five working days, the inmate may file a formal grievance, provided that the formal grievance is filed within twenty days of the incident giving rise to the complaint. CD-150500; (Doc. 29 Ex. 2 at 9.)

The copy of the informal complaint Heard submitted to the Court is labeled as a "hand written copy kept by John Heard." (Doc. 31 Ex. 5 at 2-3.) Even assuming that GCCF took no action with regard to the complaint, Heard had a duty to file a formal grievance within twenty days of the incident. In this case, Heard had until June 6, 2013, to file his formal grievance.

Heard concedes that he failed to exhaust administrative remedies, but argues that this failure was due to his transfer to OCPF. (Doc. 31 at 7.) Again, GCCF's posited failure to respond to the informal complaint gave Heard the opportunity to file a formal grievance up until June 6, 2013. This was forty-eight days before Heard was transferred. Even taking all of Heard's assertions as true, he presents no argument that administrative remedies were not available to him.

Therefore, Heard failed to exhaust the administrative remedies available with regard to Claim 8, and the Claim is barred under the PLRA. I recommend that Claim 8 be dismissed without prejudice.

## II. Section 1983 Personal Involvement

As the Court noted in a prior Order (Doc. 18), a plaintiff must allege some personal involvement by the defendant in the complained of constitutional violation in order to succeed on

a complaint under § 1983. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). "[A] plaintiff must plead that each . . . defendant, through the . . . individual['s own] actions, has violated the Constitution." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). The elements necessary to establish a § 1983 violation "will vary with the constitutional provision at issue." *Iqbal*, 556 U.S. at 676. "Thus, when a plaintiff sues an official . . . under . . . § 1983 for conduct 'arising from . . . her [supervisory] responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of [her] own conduct and state of mind did so as well." *Dodds*, 614 F.3d at 1198 (quoting *Iqbal*, 556 U.S. at 677).

In the Tenth Circuit, "§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement . . . of which 'subjects, or causes to be subjected' that plaintiff 'to the deprivation of any rights . . . secured by the Constitution . . . .'" *Id.* at 1199 (quoting 42 U.S.C. § 1983).

Heard argues that Chavez made the "initial decision to deny" the book which is the subject of Claim 6, and therefore should be liable under § 1983 for censorship and First Amendment violations. (*See* Doc. 21.) Chavez argues that Heard failed to allege any personal involvement and that this claim should be dismissed with prejudice. In support of her argument, Chavez submitted the affidavit of Dominica Garnand, who was at all relevant points the Assistant Warden of Finance and Administration at GCCF. (Doc. 29 Ex. 5.) Garnand attests that the property office at GCCF handles all incoming packages, including books, and that Chavez worked as a supervisor in the mail room, not the property office. (*Id.*) Garnand further attests

that, as the mailroom supervisor, Chavez had no personal involvement in processing the book. (*Id.*)

In his response to Chavez's first motion for summary judgment, Heard submitted copies of the administrative records related to Claim 6. (Doc. 31 Ex. 3.) In the informal complaint, Heard listed "Ms. Bkatka" as the person against whom the complaint was filed. (*Id.*)

Heard's own documentation leads to the conclusion that Chavez had no personal involvement in Claim 6. As noted above, conclusory and self-serving factual allegations, without any kind of evidentiary support that could be admissible at trial, will not preclude summary judgment. *Abdulhaseeb*, 600 F.3d at 1321. Based on Heard's documentation and Garnand's affidavit, I conclude that Heard failed to allege Chavez's personal involvement in Claim 6 and recommend that the Court dismiss Claim 6 against Chavez with prejudice.

### III. First Amendment Censorship

Prisoners have a constitutional right to correspond with individuals outside of prison. *See Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989); *Turner v. Safley*, 482 U.S. 78, 84 (1987); *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010). The right is qualified and limited by the concerns of prison safety and security. *Thornburg*, 490 U.S. at 413-14; *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990). Prison officials have great latitude, given the security concerns present within a prison, to regulate incoming mail. *See Turner*, 482 U.S. at 84-85. "'When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Gee*, 627 F.3d at 1187 (quoting *Turner*, 482 U.S. at 89). The question is "whether a prison regulation that burdens fundamental rights is 'reasonably related' to legitimate penological objectives, or whether it represents an 'exaggerated response' to those concerns." *Turner*, 482 U.S. at 87.

The Court in *Turner* set out four factors to be used when assessing the reasonableness of a prison regulation that restricts the fundamental rights of prisoners. "First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89 (citation and quotation omitted). Second, a court must evaluate "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90. Third, a court must consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* And finally, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation[,] . . . [but t]his is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Id.* at 90-91 (citation omitted).

Heard argues in Claim 5 that Chavez unlawfully rejected the 2013 Sports Illustrated Swimsuit issue. He argues that this rejection violated his First Amendment right to free speech and reached the level of unconstitutional censorship.

In support of her motion for summary judgment, Chavez points to the second affidavit of Dominica Garnand for the proposition that GCCF regulates and rejects "obscene" material. (Doc. 58 Ex. 1.) While Chavez applies the *Turner* factors in support of her motion, she does not point to a particular regulation at GCCF that she was applying. In fact, the affidavit from Garnand simply summarily states that "GCCF . . . rejects incoming materials that are obscene, meaning materials that appeal primarily to the prurient interests or are patently offensive." (*Id.*)

This may be true, but Chavez failed to produce sufficient evidence to show that no dispute of material fact exists. In this case, the material fact is whether there is a prison regulation limiting incoming publications based on "obscenity," and what that regulation means.

13

Because I find that Chavez has failed to meet her burden as to summary judgment on Claim 5, I recommend that the Court deny the motion as to Claim 5 and order a *Martinez* report, pursuant to *Martinez v. Aaron*, 570 F.2d 317, 319-20 (10th Cir. 1978), to shed light on the matter. I further recommend that the Court deny as moot Heard's motion for an extension of time to respond to this motion for summary judgment, and remind Heard that he will have an opportunity to respond or object to the *Martinez* report.

## IV. Denial of Due Process

As discussed above, the fact of incarceration does not wholly strip an individual of his or her constitutional rights. Inmates have a right to procedural due process when publications are rejected: that is, restricting access to protected communications requires "minimal procedural safeguards." *Procunier v. Martinez*, 416 U.S. 396, 417-19 (1974), *overruled on other grounds by Thornburgh*, 490 U.S. at 413-14; *see also Jacklovich v. Simmons*, 392 F.3d 420, 433 (10th Cir. 2004) (noting that other circuits have held that inmates and publishers have a qualified right to procedural due process when mail is rejected). Procedural safeguards include the warden having the sole power to reject a publication, the warden advising the inmate promptly in writing of the reasons for the rejection, the warden providing the publisher or sender with a copy of the rejection letter, and the warden including in the rejection letter a reference to the specific articles or materials considered objectionable. *Thornburgh*, 490 U.S. at 406. Procedural safeguards must also include an appeals process, with review by an official who was not involved in the original rejection. *Id.*; *Procunier*, 416 U.S. at 418-19; *Jacklovich*, 392 F.3d at 433.

The parties agree that Heard exhausted his administrative remedies with regard to the publications which became Claims 2, 3, and 4. The dispute here is over an alleged "three strikes policy" in effect at GCCF that relieves prison officials of their duty to supply a rejection slip

14

after a publication has been thrice deemed to violate GCCF policies. Heard argues that the "three strikes" policy is not published anywhere and deprives him of due process. Chavez argues that Heard's exhaustion of GCCF's grievance procedures means, by definition, that he was afforded due process on these claims. Or, in the alternative, Chavez argues that Heard was on notice that his publications would be rejected because they came from unapproved vendors. (S*ee* Doc. 58 Ex. 6.)

While Chavez correctly notes that a failure to adhere to state and local procedural requirements or administrative regulations, such as failing to provide a rejection slip, does not necessarily result in a constitutional violation, *see Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993); *Atencio v. Bd. of Educ.*, 658 F.2d 774, 779 (10th Cir. 1981), it does raise a sufficient question of fact to make these claims inappropriate for summary judgment.

I find that Chavez has failed to meet her burden of showing that there are no genuine issues of material fact with regard to Claims 2 through 4. Therefore, I recommend that the Court deny Chavez's motion for summary judgment on these Claims and order a *Martinez* report to further develop the factual record and allow Heard to respond through objections to that report.

## MOTION TO COMPEL

As discussed above, Heard filed three documents that, collectively, can be construed as a Motion to Compel under Federal Rule of Civil Procedure 37. (Docs. 41-43.) The first document, entitled "Plaintiffs [sic] reply to Defendant Chavez's responses to Plaintiffs [sic] requests for admission," appears to respond to Chavez's answers to a Request for Admission. (Doc. 41.) The second document, "Plaintiffs [sic] Response to, Defendant Chavez's responses to plaintiffs [sic] 'Request for Subpoena to produce documents,'" apparently outlines the documents Heard would like produced during discovery. (Doc. 42.) The third document, "Motion to disclose discovery,"

requests an order directing Chavez "[t]o disclose all discovery materials" within thirty days. (Doc. 43.) Taken together, the "Motion to disclose discovery" clearly references the two prior documents in its definition of "discovery materials." Therefore, I construe these three documents as a Motion to Compel.

Heard appears pro se in this action, so I must liberally construe his allegations, but apply the same legal standards applicable to pleadings drafted by counsel. *See Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992). Rule 37(a) lays out the requirements a party must meet before moving "for an order compelling disclosure or discovery." In particular, Rule 37(a)(1) states that "[t]he motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." None of Heard's documents contain such a certification. Where, as here, a court finds that the movant on a motion to compel has failed to put forth adequate efforts to confer in good faith to resolve the dispute, the motion to compel is properly denied. *See, e.g.*, *Brackens v. Shield*, No. 06-2405-JWL-DJW, 2007 WL 1805800, at *1 (D. Kan. June 22, 2007) (unpublished); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 460 (D. Kan. 1999). Because I find that Heard failed to confer with opposing counsel as required by Rule 37, I recommend that the Court deny Heard's motion to compel without prejudice.

CONCLUSION

I conclude that Heard failed to exhaust administrative remedies as to Claims 7 and 8 and failed to show that Chavez had personal involvement with the rejection of the Sports Illustrated book involved in Claim 6. I further conclude that a genuine issue of material fact may exist such that granting summary judgment as to Claims 2 through 5, without the benefit of further factual

development or a response from Heard, would be inappropriate. Finally, I conclude that Heard failed to meet the requirements of Federal Rule of Civil Procedure 37 and is therefore not entitled to an order compelling discovery.

Therefore, I recommend that the Court GRANT Chavez's Motion for Summary Judgment (Doc. 29) and GRANT IN PART AND DENY IN PART Chavez's Second Partial Motion for Summary Judgment (Doc. 58). I recommend that the Court dismiss Claims 7 and 8 against Chavez without prejudice and dismiss Claim 6 against Chavez with prejudice. I further recommend that the Court deny the Motion as to Claims 2 through 5 and order a *Martinez* report on these claims. I also recommend that the Court DENY AS MOOT Chavez's Motion to Stay Discovery (Doc. 60). I recommend that the Court DENY AS MOOT Heard's Motion for an Extension of Time (Doc. 59) as to Claims 2 through 5, with the reminder that Heard will be able to object to the *Martinez* report, DENY AS MOOT Heard's Second Motion for an Extension of Time (Doc. 69), and DENY Heard's Motion to Compel (Docs. 41-43).

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.