IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN HEARD,

    Plaintiff,

v.                                                                                                CV 13-1236 KG/WPL

WARDEN BRAVO, et al.,

    Defendants.

**SECOND PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

    I previously summarized the background of this case in my Proposed Findings and Recommended Disposition on November 19, 2014. (Doc. 72.) This second Proposed Findings and Recommended Disposition ("Second PFRD") addresses the claims against Defendant P. Bhakta. Bhakta was, at all relevant periods, the property manager at the Guadalupe County Correctional Facility ("GCCF"), where Heard was incarcerated. Bhakta is a defendant for claims 1 and 6.

    Bhakta filed two partial motions for summary judgment (Docs. 98, 117), while Heard filed a cross motion for partial summary judgment as to claim 1 (Doc. 120) and a Motion to Write Eli Flores for Statement with regard to claim 6 (Doc. 119). Heard proceeds pro se. Having considered the filings and the relevant law, and being otherwise fully advised on these matters, I recommend that the Court deny Bhakta's partial motion for summary judgment on claim 1 (Doc. 98), grant Heard's partial motion for summary judgment on claim 1 (Doc. 120), and grant-in-part and deny-in-part Bhakta's partial motion for summary judgment on claim 6 (Doc. 117). I reserve

judgment on Heard's Motion to Write Eli Flores for Statement until after the Court rules on any objections to this Second PFRD.

## BACKGROUND

The parties agree that, at all times relevant to this litigation, Heard was incarcerated at GCCF.[1] The Court has covered much of the factual background of this case in previous Orders, so I will not repeat it here. (*See* Docs. 18, 27.)

Claim 1 alleges a First Amendment violation relating to Bhakta's rejection of a book ordered directly from the publisher.[2] (*See* Doc. 99 at 8-9 (explaining that the alleged violation was not delivering the book, and agreeing that neither GCCF nor Bhakta engaged in impermissible censorship).) Claim 6 alleges censorship in violation of the First Amendment and violations of the Equal Protection Clause under the Fourteenth Amendment relating to the rejection of a Sports Illustrated Swimsuit Explorer's book. (*See* Doc. 21 at 12; Doc. 91 at 7-10.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of "'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

---

[1] Heard is a state prisoner. The First Amendment applies to the states through the Fourteenth Amendment. *See Gee v. Pacheco*, 627 F.3d 1178, 1181 n.1 (10th Cir. 2010).

[2] Heard argues in his cross-motion for partial summary judgment that there is a due process violation related to the rejection of this book. The parties do not argue that Heard failed to exhaust his administrative remedies or was unable to do so. Heard's argument hinges on the reason the book was rejected and suggests that he was able to—unsuccessfully—appeal the rejection through the prison system, which is all that is required for due process. *See Procunier v. Martinez*, 416 U.S. 396, 417-19 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 413, 413-14 (1989) (holding that restricting inmates' access to rejected communications requires "minimal procedural safeguards," including the warden having the sole power to reject the publication, the warden advising the inmate promptly in writing of the reasons for rejections, the warden providing the publisher or sender with a copy of the rejection, etc.); *see also Jacklovich v. Simmons*, 392 F.3d 420, 433 (10th Cir. 2004) (same).

(1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). Once the moving party has met this burden, the nonmoving party must identify specific facts that show the existence of a genuine issue of material fact requiring trial on the merits. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The nonmovant must identify these facts by reference to "affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671. A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Id.* A mere "scintilla" of evidence is insufficient to successfully oppose a motion for summary judgment. *Id.* at 252. The record and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmovant. *See Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).

In a case such as this, where the burden of persuasion at trial would be on the nonmovant, the movant can meet Rule 56's burden of production by either (1) providing affirmative evidence negating an essential element of the nonmovant's claim or (2) showing the Court that the nonmovant's evidence is insufficient to demonstrate an essential element of the nonmovant's claim. *Celotex*, 477 U.S. at 331 (citations omitted). Evidence provided by either the movant or the nonmovant need not be submitted "in a form that would be admissible at trial." *Id.* at 324. Rather, the content of the evidence presented must be capable of being presented in an admissible form at trial. *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006). For example, parties may submit affidavits to support or oppose a motion for summary judgment, even though the affidavits constitute hearsay, provided that the information can be presented in another,

admissible form at trial, such as live testimony. *See* FED. R. CIV. P. 56(c)(4); *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010); *Trevizo*, 455 F.3d at 1160.

A bona fide factual dispute exists even when a pro se plaintiff's factual allegations that are in conflict with the defendant's affidavits are less specific or well-documented than the contentions of the defendant. *See Hall*, 935 F.2d at 1109. Conclusory and self-serving allegations without facts that would be admissible in evidence do not create a material factual dispute that would preclude summary judgment. *Id.* at 1111; *see also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1321 (10th Cir. 2010) (quoting *L&M Enter., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000)) ("Unsupported conclusory allegations . . . do not create a genuine issue of fact."); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005) (citations and internal quotation marks omitted) ("We have long held that conclusory allegations without specific supporting facts have no probative value.").

Because Heard is a pro se litigant, I must construe his pleadings liberally and hold them to a less stringent standard than is required of a party represented by counsel. *See Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Liberal construction requires courts to make some allowance for a pro se litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110) (alterations omitted). However, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.*

**DISCUSSION**

Preliminarily, the parties agree that Heard properly alleged Bhakta's personal involvement and appropriately exhausted his administrative remedies with respect to claims 1 and 6.

I.     **Claim 1**

Heard argues in claim 1 that Bhakta unlawfully confiscated and rejected a book he ordered from the publisher. He argues that this rejection violated his First Amendment right to free speech. The parties agree that the alleged First Amendment violation in claim 1 stems from content-neutral deprivation of access to a publication. Heard does not claim that the regulations are unconstitutional, but rather that they have been unconstitutionally applied.

Prisoners have a constitutional right to correspond with individuals outside of prison. *See Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989); *Turner v. Safley*, 482 U.S. 78, 84 (1987); *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010). The right is qualified and limited by the concerns of prison safety and security. *Thornburg*, 490 U.S. at 413-14; *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990). Prison officials have great latitude, given the security concerns present within a prison, to regulate incoming mail. *See Turner*, 482 U.S. at 84-85. "'When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Gee*, 627 F.3d at 1187 (quoting *Turner*, 482 U.S. at 89).

New Mexico Corrections Department ("NMCD") Policy CD-151201(J) states that "[b]ooks and magazines will be accepted and delivered to inmates if they are received directly from the publisher or vendor, subject to other restrictions set out herein and in other policies . . . ." (Doc. 98 Ex. C at 2.) NMCD Policy CD-150200 defines "personal property" as "[n]on-

institution issued property items that an inmate is permitted to retain if approved pursuant to this policy and procedure." (Doc. 98 Ex. D at 2; Doc. 102 Ex. 1 at 2.) NMCD Policy CD-150201, titled "Inmate Property," governs the acquisition of property:

> 1. In addition to property which inmates are allowed to retain upon admission, inmates may acquire personal property through institutional canteens and approved vendors.
>
> 2. . . . All personal property must be purchased by inmates via approved vendors or canteen/inmate store. . . .
>
> 4. Inmates may acquire books, magazines and newspapers from the publisher not to exceed the allowable quantity as per institutional custody limitation. (Nudity, pornography, and/or gang-related materials are prohibited).
>
> 5. Inmates may not acquire personal property in any manner other than those listed in this section. Those items acquired by means other than those listed in this section will be confiscated and destroyed.

(Doc. 98 Ex. D at 3; Doc. 102 Ex. 1 at 12.) GEO-GCCF Policy 13.003(F) quotes this language exactly. (Doc. 98 Ex. F at 6.)

In support of her motion for summary judgment, Bhakta contends that GCCF considered "[p]ublications that were not issued directly to inmates by prison officials" to be personal property subject to the personal property policies of NMCD and GCCF. (Doc. 98 Ex. A at 1.) She further states that "[i]nmates were only permitted to obtain personal property, including publications, from approved vendors or from the commissary." (*Id.*) Bhakta said that she "rejected the book . . . because Heard did not acquire it in accordance with applicable policies and procedures[, namely,] Heard did not order the book in question from an approved vendor." (*Id.*)

Unfortunately for Bhakta, GCCF and NMCD policies are quite clear: "Inmates may acquire books, magazines and newspapers from the publisher . . . ." NMCD Policy CD-150201(F); GEO-GCCF Policy 13.003(F). The policy specifically states that "personal property

must be purchased by inmates via approved vendors," but that inmates "may acquire books . . . from the publisher . . . ." *Id.* Bhakta's argument that "approved vendor" and "publisher" are interchangeable terms is unavailing. Furthermore, Bhakta's affidavit defeats her argument that she is entitled to summary judgment in her favor as to claim 1. Bhakta's actions violated NMCD and GCCF policy. Bhakta denied Heard access to a publication without a legitimate cause, which violated his rights under the First Amendment.

To make out a claim for relief under 42 U.S.C. § 1983, the plaintiff must show that (1) a person (2) acting under color of state law (3) caused (4) a deprivation of a federally protected right. There is no debate that Bhakta is a person or that she acted under color of state law. As explained above, Bhakta inappropriately interpreted and thus misapplied NMCD and GCCF policy to confiscate a book Heard ordered from the publisher. Bhakta thereby infringed Heard's right to communicate with those outside of prison. This infringement was not related to any legitimate penological interest. Accordingly, Heard was deprived of his federally protected First Amendment right and Bhakta caused this deprivation by censoring material for reasons unrelated to legitimate penological interests. *See Pell v. Procunier*, 417 U.S. 817, 824 (1974).

I recommend that the Court find that Bhakta violated Heard's First Amendment rights, deny Bhakta's partial motion for summary judgment (Doc. 98), and grant Heard's partial motion for summary judgment on claim 1 (Doc. 120).

## II. Claim 6

Heard argues in claim 6 that Bhakta unlawfully rejected the Sports Illustrated Explorers Edition book, and that this rejection violated his First Amendment right to free speech and reached the level of unconstitutional censorship. Furthermore, Heard argues that Bhakta violated

his Fourteenth Amendment right to Equal Protection and discriminated against him as a "class of one" because another inmate was allegedly allowed to possess the same book.

### A.     First Amendment

As stated above, prisoners have a constitutional right to correspond with individuals outside of prison. *See Thornburgh*, 490 U.S. at 413; *Turner*, 482 U.S. at 84; *Gee*, 627 F.3d at 1187. The right is qualified and limited by the concerns of prison safety and security. *Thornburg*, 490 U.S. at 413-14; *Smith*, 899 F.2d at 944. Prison officials have great latitude, given the security concerns present within a prison, to regulate incoming mail. *See Turner*, 482 U.S. at 84-85. "'When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Gee*, 627 F.3d at 1187 (quoting *Turner*, 482 U.S. at 89). The question is "whether a prison regulation that burdens fundamental rights is 'reasonably related' to legitimate penological objectives, or whether it represents an 'exaggerated response' to those concerns." *Turner*, 482 U.S. at 87.

The Court in *Turner* set out four factors to be used when assessing the reasonableness of a prison regulation that restricts the fundamental rights of prisoners. "First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89 (citation and quotation omitted). Second, a court must evaluate "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90. Third, a court must consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* And finally, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation[,] . . . [but t]his is not a 'least restrictive alternative' test:

prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Id.* at 90-91 (citation omitted).

Bhakta cites to GCCF policy dictating that "obscene" mail must be rejected. Heard counters that a separate prison facility subsequently found the same book to be acceptable for an inmate to possess and not obscene.

Heard cites to no authority, and I am not aware of any authority, suggesting that one facility's determination of obscenity or acceptability is binding on another facility. Heard also fails to cite authority suggesting that differing determinations of obscenity or acceptability are determinative on First Amendment issues: prison official enjoy great latitude when regulating their facilities on the basis of safety concerns, and different officials at different institutions may reasonably come to different conclusions.

The Court previously analyzed this policy and attendant regulations in its Order Adopting Magistrate Judge's Proposed Findings and Recommended Disposition, in the context of a First Amendment claim against Defendant Chavez for rejecting a Sports Illustrated Swimsuit Edition. (Doc. 110 at 5-7.) The Court found that the obscenity regulation at GCCF "does not rise to the level of a constitutional violation and is reasonably related to legitimate penological objectives." (*Id.* at 7.) The regulation cited by Bhakta, therefore, is not a constitutional violation. I recommend that the Court grant Bhakta's partial motion for summary judgment with regard to the First Amendment claim against her in claim 6.

### B. Equal Protection Under the Fourteenth Amendment

Heard also argues that Bhakta violated his right to Equal Protection under the Fourteenth Amendment by subjecting him to discrimination in a class-of-one, because another similarly situated inmate was allowed to possess the book in question. Bhakta argues that Heard's claim

must fail as a matter of law because he cannot demonstrate that Bhakta intended to discriminate against him or that the other inmate was in fact similarly situated.

Unlike a typical equal protection claim, a plaintiff claiming equal protection violations under the class-of-one doctrine "focuses on discrimination not between classes or groups of persons, as 'traditional' equal protection doctrine does, but on discrimination against a specific individual." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012) (citing *Engquist v. Oregon Dept. of Agric.*, 553 U.S. 591, 601 (2008)). To succeed on such a claim, the class-of-one plaintiff must first show that he or she, individually, was "intentionally treated differently from others similarly situated." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In the Tenth Circuit, this first step has two prongs: the plaintiff must show both that the discrimination against him was intentional and that he was treated differently from "similarly situated" individuals. *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1219-20 (10th Cir. 2011); *Jennings v. City of Stillwater*, 383 F.3d 1199, 1213-15 (10th Cir. 2004). The intent requirement does not mandate "some vicious or exploitative motive" by the actor, but rather that the person acted against the plaintiff "*because of* his or her identity." *SECSYS, LLC*, 666 F.3d at 689-90 (emphasis in original). The plaintiff may show intentional discrimination through circumstantial evidence, "usually in the form of an inference of discrimination arising from the fact that his or her adverse treatment was such a stark outlier from an otherwise consistent pattern of favorable treatment in similarly situated cases." *Id.* at 689. Upon satisfying the first step, the plaintiff must then prove that there was no "rational basis" for the discrimination. *Id.* at 564-65.

Bhakta contends that, at the time she rejected the book, she was unaware that another GCCF inmate possessed the same book. (Doc. 117 at 9, Ex. B at 1.) Because she was unaware of

10

the other inmate possessing the book, Bhakta argues that she could not have intended to treat Heard differently than other similarly situated inmates.

In his response to Bhakta's partial motion for summary judgment, Heard claims that Eli Flores, another GCCF inmate, had been allowed to have the book by Warden Bravo three months earlier, and that Bhakta processed the book for Flores. (Doc. 118 at 2; *see also* Doc. 31 Ex. 4 at 3 (purported copy of Flores's Property Inventory List).) While Heard did not sign his response under penalty of perjury, the contradictory evidence could be presented in an admissible form at trial.

Whether Bhakta knew about the other inmate allowed to possess the book when she rejected Heard's book creates a genuine dispute of material fact: if Bhakta did not know, she could not have intended to treat Heard differently than other similarly situated inmates; if she did know, the analysis must proceed. Accordingly, I recommend that the Court deny Bhakta's partial motion for summary judgment on Heard's Fourteenth Amendment argument under claim 6 and refer the case for further proceedings.

## CONCLUSION

I recommend that the Court find that Bhakta violated Heard's First Amendment rights under claim 1 by censoring a book for reasons unrelated to legitimate penological ends. Accordingly, I recommend that the Court deny Bhakta's partial motion for summary judgment on claim 1 (Doc. 98) and grant Heard's partial motion for summary judgment on claim 1 (Doc. 120). I further recommend that the Court uphold the GCCF obscenity regulation involved in the First Amendment claim in claim 6, but find that there remain outstanding issues of material fact with regard to the Equal Protection claim. Therefore, I suggest that the Court grant-in-part and

deny-in-part Bhakta's partial motion for summary judgment on claim 6 (Doc. 117) and refer the Equal Protection claim for further proceedings.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

                                            William P. Lynch
                                            United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.